We'll call our first case, Schirnhofer v. Premier, and we'll, I guess, begin according to the minutes that I have. Ms. Davidson-Welling, you have the floor. Thank you, Your Honor. May it please the Court, this is Maureen Davidson-Welling on behalf of the appellant, Beth Schirnhofer. I would request to reserve five minutes for rebuttal. Done. Thank you. I'd like to speak today about three things. The district court's decision in error to strike the damages award, as well as the fee award and time permitting the evidentiary issue. At trial below, the jury was properly charged on the ADA motivating factor, same-decision defense. It was instructed that the plaintiff was not entitled to damages if the defendant proved that it would have treated the plaintiff the same, even if the plaintiff's disability had played no role in the decision to terminate her employment. And after being so charged, it went ahead and awarded damages, reflecting its conclusion that a different decision would have been made in the absence of discrimination. The jury was also... Mr. Laird-Right, that's where your conclusion is open to question and dispute and is disputed. So let's take a second and look at the jury verdict form itself, which is in the appendix at page 507. And I'd like you to explain to me why the note at the bottom of that page that says, answer question 5 only if the above finding on questions 1, 2, 3, or 4 is for the plaintiff. Explain why that note doesn't undermine your argument that really question 5 reflects some misunderstanding or different understanding from the jury, which could still be harmonized. In other words, if we presume that the jury understands and follows instructions and they understand that they're only going to get to question 5 if they've actually found for the plaintiff on questions 1 and 2, doesn't that mean that they understood, okay, we found for the plaintiff, but now we're going to decide whether or not the plaintiff gets to keep it? So respectfully, so the verdict form does say, as Your Honor has pointed out, that there are, you know, find in favor of the general verdict, you know, find in favor. A general verdict is generally understood to include all factual findings, you know, that form the basis of that. But that note did not specify, you know, what the next question is referred to, right? And in terms of answering those questions, you know, what the jury understood is, you know, is something that really needs to be interpreted in light of the record as a whole because it was unclear. Well, why isn't it clear enough that, again, if we presume the jury follows instructions and that instruction is very clear only to answer question 5 if you've decided for the plaintiff on one of the earlier questions, why doesn't that tell the jury we want to know whether the jury's going to keep, whether the plaintiff's going to keep this now? So even assuming that that is one way that you could read it, you can't presume that the jury meant different things in one part of its answer than another. So when it, you know, in accordance with the instructions, when it identified that they found and awarded plaintiff damages, it had been told that it could only award that plaintiff was not entitled to damages unless they resolved the affirmative defense in her favor. And juries are presumed to, you know, to follow the instructions given them. And as stated in the Lofman case, you can't harmonize a verdict by assuming that they didn't comply with the instructions. So, you know, in terms of, you know, in terms of interpreting this verdict form and the instructions, it all has to be taken together. And, you know, you can't take question 5 and ask questions. How do you get to harmonization? That's what I'm trying to, and I'm not doing an effective job, I apologize to my colleagues, but you talk about harmonizing it and you say this can be read together. I read your brief. I understand your brief. I'm struggling with the idea and I'm trying to have you help me. How does, how can you look at the verdict form and understand that question 5 means something other than what it means or other than what it says? You've said, for example, well, maybe the word alleged is really important in that context. But if we looked at that question and we said, oh, well, they thought that here we were talking about perceived versus actual disability, I take it that that's your point. One of them. How can that, if that's the way we interpret it, doesn't that just undermine, doesn't that make the first couple questions superfluous? So I need the questions about, or questions, yeah, 4, superfluous, because it's asking about those same things. Question 4? I'm sorry, not question 4. I mean questions 1 through 4. So questions 1 through 4 are the general verdict questions, and they are considered to be, right, that's the general verdict. And then questions, you know, 5 is considered to be a factual finding, right? And so that is a factual finding on that specific fact. And to the extent that it can be understood as a finding on only one prong of the disability discrimination, you know, one of the theories, two theories that the discrimination was tried on, you know, then the other still stands. It isn't, there is no square conflict between question 5 and the jury's answer to questions 1 and 2. And, you know, if there's no square conflict, then they're not irreconcilably inconsistent, and the jury verdict needs to be, the damages award should be upheld. But if we look after, excuse me, after, excuse me, after question 6, there's no answer to question 7, only if you found in favor of plaintiff on questions 1, 2, 3, or 4. So, you know, maybe question 7 should have been question 5, but at the same time, the fact that they put figures in for 7 doesn't mean that question 5 doesn't knock it out. So, well, I think there's a, you know, sort of conceptually, if the jury followed the instructions, they could only answer, they could only award damages if they found in Ms. Schoenhofer's favor on the affirmative defense. You know, they were told she wasn't entitled to damages otherwise. And so, you know, the note says answer question 7 only if you found her plaintiff on 1, 2, 3, or 4. And they did, so that they answered it. They followed the instructions, but that doesn't mean that question 5 doesn't knock the whole thing out. Well, but they were also instructed in the charge point that they could only, that they could only award damages if Ms. Schoenhofer was only entitled to damages if, you know, she, if the jury wouldn't, if the employer wouldn't have made the same decision, right? Yeah, but they're assuming that they intended to award damages. What Judge Roth has just pointed out more effectively than I was is it could easily be the case, in fact, it seems to be the case that they were just following instructions and they said, well, we did, we did, we did answer for the plaintiff on 1 and 2, so we've got to fill this question 7 in. But that doesn't mean we intend for her to get it. On the contrary, based on question 5, she doesn't get it. Well, I think if you read the jury instructions, you know, they are very clear that the jury was being asked to consider an award of damages, right? And they were specifically told that they should write any awards for back pay and front pay, you know, separately on the verdicts list. So, you know, they're sort of, you know, those, based on the charge that was given, you know, their answers, you know, have to be understood as the damages award. There's no, you know, that that's what they were told that they were considering and where they were told to write it. Do you have anything you want to say? We're almost up on, in fact, we are up on your 10-minute mark. Is there anything you wanted to add to your briefing about the other arguments, the evidentiary arguments that you've made? Yeah, you know, I would just add, you know, in our view, you know, if the court does not reinstate the damages award, we think we would ask that it, you know, grant a new trial. We think the district court abused its discretion in admitting evidence. You know, it allowed a backdoor advice of counsel defense, you know, and you can't conclude that that was harmless, particularly since, you know, that was really used on the retaliation claim and there was strong evidence and it's still, you know, and they found against us on that, against the Schoenhofer on that claim, you know, that there, you know, as well as, you know, that there were four different issues, you know, each one of which would, you know, would merit a new trial. Okay. Judge Mady or Judge Roth, anything else that you want to ask Ms. Davidson-Welling before we hear from Mr. Stine? No. Not for me. Judge Jordan, it's Paul Mady. If I could ask just a quick question about the fee award. Yes. Good morning, counsel. It's Judge Mady. I wonder if you could help me understand a little bit about the court's award of fees under 2008. As I read the statute, that section allows attorney's fees and costs only that are directly attributable to pursuit of a mixed motive claim. Did the district court here make any determination about which of the claimed fees were directly attributable only to Ms. Schoenhofer's mixed motive claim? Okay. So the district court, you know, this issue, you know, we argued to the district court that the claims were related claims, right, that they're all, you know, sort of under the line of Hensley, which, you know, the Hensley case from the Supreme Court recognizes that, you know, when you bring related claims that they are not distinct for purposes of determining fees. And so that was argued to the district court, and the district court found that the claims were all directly attributable to the motivating factor claim. So, yes. Well, so your interpretation of Hensley is that it informs the interpretation of 5G, 2B, in a way that makes that directly attributable language susceptible to a broader interpretation, or is it assumed that it is a whole reasonableness test? How do you get me? Yeah. The former. You know, that the, I mean, the motivating factor fee provision is a remedial, you know, the remedial statute that has to be construed broadly in favor of its purposes, you know, as discussed in the Guggenkamp case we cited in our brief. And, you know, if you look back at Hensley and what Hensley says about the award of fees, what it says is that, you know, it recognizes that when you bring related claims, you know, it's extremely difficult or impossible to sort this out. And that really, you know, what it says, you can't view them as a discrete series of claims. And so, you know, viewed that way, if you look at the motivating factor provision, you know, yes, the real question is what is meant by, you know, the motivating factor claim, and informed by Hensley what that means is, you know, the motivating factor claim, including the, you know, the work that is on the related claims, right? Yeah. 5G-2B is somewhat more specific though, right? It has this additional language around directly attributable to mixed motive claims. And so I understand the general test, but I haven't seen anything that explains how that applies in a G-2B case. Are you aware of any authority or another court that's addressed to that language and found it susceptible to the Hensley test? So the cases that we have cited include the Hannon case and the district court Budenkopf case, both of which sort of, you know, sort of basically talk about the legislative history and also sort of evoke that same sort of the analysis from Hensley that you can't really separate the, you know, you can't separate out the work. And those are the... If you can just help me understand that one, if that could cancel, why couldn't you separate out the work? I understand it may be easier and perhaps more efficient to not do so, but when you say it can't be done, why is that the case? Well, I think, you know, a lot of... I mean, if you go back and look at what Hensley recognizes, a lot of the work is going to be done on all general litigations together, and the claims are going to be over... You know, if you have related claims or claims arising out of, you know, a common core of fact, the work is going to be on multiple claims. You can't necessarily... You can't split it out the way that, you know, the way that you sort of... You can't necessarily divide it. You can't practically divide it, and it's just, you know, a lot of it is you're unable to delineate and separate it because the claims are so overlapping, the facts are so interwoven. How can you separate it? And so, which is what led to the recognition in Hensley that, you know, when you're talking about... And the language in the E2G2G says pursuit of the motivating fact claim, right? That's going to include all of the, you know, the work towards that. You know, so it really is... You know, so that's... You know, so I think that those cases, you know, recognize that, and it comes from Hensley. And that, you know, that interpretation... The contrary interpretation, you know, would be, you know, completely inconsistent with, you know, the statutory and legislative history of this provision, which was... Hold on a moment. Why would it be... If you could just walk me through that. Why is it directly contrary to interpret directly attributable to to mean something other than directly attributable to? Well, if you sort of... Because... So, you know, the... Okay, so in terms of why it would be... So the legislative history, right, was that after Price Waterhouse, you know, Congress, you know, enacted this fee provision, among others, to restore fees and basically, you know, make them potentially available in cases and ensure that there would be representation and some form of redress to plaintiffs, you know, sort of served public purposes, the public good to do this. And so... If you, you know, if sort of saying, you know, as discussed, there's all these problems with trying to separate out fees. And if you have... If what you have is that when you're at... If you have related claims and you're at risk, that all of... You know, that that would... You know, you're already getting cut down. Like here we were... You know, we've been cut down to, you know, just, you know, 40%. You know, that that was really... That it would make it... It would just eviscerate the availability of fees, even in cases where the discrimination was really invidious. And so... And, you know, let me also say that with respect to this particular argument, you know, this argument, just sort of going back to what the district court did, you know, they raised an argument, you know, sort of said, made an objection and only raised it as to one specific type of work in the district court, this argument, and as the motion to disqualify work. And the district court granted that objection. That was the only... You know, they had an obligation to raise, to sort of point out the type of work under Bell and Rhoad versus De La Suprette and, you know, those fee cases out of this court. And they didn't. The only type of work that they identified, the only category they identified, was the motion to disqualify. And the district court granted that objection. And he reduced the fee award by that $16,515 in fees and the corresponding cost. And so then on appeal, they've come back and then, you know, say, look, this is an issue. And they've re-argued the same stuff, even though the district court granted the objection as the only work they identified. And then, you know, you know, and then tried to argue some additional stuff, which we've shown is all related. But, you know, they've used it. Your point is that there's a forfeiture of that argument. Is that right? Yes. Okay. Judge Mayne, any other follow-up you wanted to make? Yes. Nothing further. Thanks, Judge Jordan. Let me ask a follow-up on that. Should the district court have considered the shepherd factors in its award of a fee? Considered the shepherd factors? Shepherd. Shepherd factors. Yeah. So I think that, you know, the district court did, you know, it did cite, you know, I think it did recognize the significance and the public purpose in its analysis. And, you know, it did consider the proportionality. You know, I don't know that it was required to explicitly consider all of those. You know, if you take, like, the Ninth Circuit case in Cisco, you know, what they said was they didn't want to ossify or enshrine a specific list of factors. Right? The district court here, you know, clearly, you know, considered, you know, sort of considered the overall sort of the relative success and issue, you know, compared to and made a significant reduction, you know, cut the fees down to the 40% of fees and costs, and did specifically consider and reject arguments that the defendant made in its opinion about why this case wasn't significant and why it, you know, why it didn't matter. So I think that it did make a consideration of those. I'm not sure that it was required. You know, I think there can be different things that can be considered in making that analysis in different cases. Okay. Thanks, Ms. Davidson-Welling. We'll have you back on rebuttal. Mr. Stein. Okay. Thank you, Reuter. I'm Stanley Stein from Pittsburgh and honored to appear before this court by telephone for the first time that I've ever experienced. I believe that we are basically arguing for reliance on the language of the statute in this particular case. 5G2B2. So you're taking up your cross-appeal first? Well, I can do either. I will do our appeal on the legal fees first. No, I'm not trying to steer you one way or another. I'm happy to do that. I believe that a lot has been discussed on the mixed motive provision of the court, but I'll come back to that if necessary. Our argument on the award of the legal fees is basically that the district court did not follow the Shepard factors as were previously set forth for our case. Did you forfeit your argument in essence? I mean, you just heard what Ms. Davidson-Welling said about you only made one point to the district court. The district court accepted your one point, reduced it, and now you're here arguing additional points to us that weren't made before the district court. What's your response to that? I believe that what we did in our brief was to identify not only the material on the disqualification issue, but several others, specific amounts that we could identify as obviously related. Right. My question, though, is I'm trying to get you to make a direct response to her. She says, hey, you never said this stuff to the district court. Is that an accurate or an inaccurate statement? Are these additional points that you're making about places where the court could have or should have cut, were those arguments made to the district court? We made arguments to the district court on specific hours and fees. We identified them specifically. They're in our brief, where we could identify specifically things that were related obviously to matters that should have been eliminated. Our point was with those that they were not eliminated by the plaintiffs, and so the plaintiffs obviously made no effort to even eliminate the things that were obviously not related to the claim that they won. And we have no idea of what else is involved because we can't do it. Hold on just a second. I'll make one last run at this. The plaintiff's lawyer says they pointed to only one specific thing when they argued against the fee petition in the district court. They identified one category of things that shouldn't be included, and the district court agreed with them. No, I believe that we identified more than one. I believe if you go to our brief, we identified several. And the point being made that so if I went back and looked at your briefing in the district court on this and compared it with the arguments you're making here, I'd see a one-to-one correspondence that, yes, you did make those arguments in the district court. Yes, I believe the argument we made in the district court was that we went through the material that was provided by a plaintiff and identified to the best that we could those several things that were specifically not related to the claim that they won. And we pointed those out. You know, you've answered that question. You've just denied that she's accurately stated what happened in the district court, and now we'll go back or I'll go back. And, you know, one of you is mistaken, and I'll try to figure that out. But speak, if you would, to the issue she's raised, which is in response to Mady's question, that the Supreme Court's Hensley opinion effectively rejects your position, that it says, you know, we don't expect and can't expect lawyers in an employment discrimination case to go issue by issue and separate them out in their billing because there's a whole lot of billing and work that's done that's relevant to everything that's being talked about in the case. So it's impractical. I mean, I'm paraphrasing, obviously. I could quote Hensley as they do at page 24 of their reply brief, but you know the argument. Please respond to that. Yes, our argument to that, of course, is that the statute requires something else. And the statute in this particular case specifically says that the claim is limited only to the specific claim that was won and directly. What are we to make of the language of the Supreme Court in Hensley where they say much of counsel's time will be devoted generally to litigation as a whole, making it difficult to define hours expended on a claim-by-claim basis? In other words, is that language just not pertinent here? Well, no, I think that the plaintiff's counsel has the obligation to do that as best as they can. As we've cited in the Cady case as well, the counsel, when they know that the case, as they did in this case, is going to be a mixed motive case, they have an obligation to keep those kinds of records because they can. In fact, the plaintiff has admitted that in their motion in Limine, for example, number 12, the plaintiff admits that the claims for discrimination involve different factual and legal elements than the withdrawn failure to accommodate claims. So if that's the case, then they could have kept separate records, kept records, and identified those factual elements and those legal elements that were different between the discrimination claim that they won and the failure to accommodate claims, for example, which they withdrew. Also, with regard to the FMLA claim, they argued... So when Hendley says, in effect, look, it's going to be impracticable to ask lawyers to bill that way, you're saying the statute says different, so who cares what the Supreme Court says? How do we square your argument with Hendley, or do you have a different read or take on Hendley? They're quoting it to us. I've quoted it to you. Their position has some logical force to it in light of what the Supreme Court's language. That's the argument I'm trying to get you to meet. I know you're falling back on this statutory text, but we've got to take account of what the Supreme Court of the United States tells us, too, that Hendley does not apply here. No, I think that what it... If they need to be reconciled, we would argue that the statute has a different take, and it's the statute that, while the Supreme Court talks about what the general problems may be with regard to the ability of plaintiff's counsel to keep track, that the statute gives them the obligation to do so when they can do so. And in this particular case, they could. Okay. I got your argument on that. Maybe my colleagues will have some questions on that point as well, and I'll see to them. But if they don't, I'll shift topics on us. Judge Mady or Judge Roth, anything you want to ask on the fee petition argument? Nothing further, thank you. Nothing from me, thanks. Okay. Well, then, can you, Mr. Stein, please address, you know, the argument that seems to be most on the plaintiff's mind when it comes to evidentiary points, and that is their assertion, I will do it sort of crudely here just for the sake of time, that you smuggled in an advice of counsel defense that you had no right to put in the case and that the court allowing you to do that is reversible error. Can you take that on directly? What was in the case that made anything that the lawyer said about accommodations relevant to the discrimination or retaliation claims? Okay. Well, let me do one thing, if I can, with the permission of the court before I respond to that, and that is to request permission of the court to withdraw one of our citations in that particular section. Yes. I hope you're going to withdraw Farias v. Instructional Systems. We are withdrawing Farias v. Instructional Systems. Thank you. And we'll replace that by, with the permission of the court, by the end of the week in a letter to the extent that we can replace it with a... Well, yeah, no, we don't need it today. We know what your position is, and I appreciate your withdrawing Farias because it doesn't help you. In fact, it cuts way in. I don't know how that got into your brief, but I'm grateful that you did that. Now can you hit straight up the question about, you know, how do you get this? What's it relevant to? How do you get advice of counsel into this case properly? Well, I think advice of counsel, we argue, had other relevancies, such as we were basically accused of violating the law. And in plaintiff's opening remarks, we think that they basically said we are lawbreakers. We believe that we had the right to prove that we made every effort, regardless of what specific claim was involved, to show to the jury that we made every effort to abide by the law and that we were acting in good faith. So is this a kind of a they opened the door to a general question about whether you were law abiding? Yeah, I believe that they did open the door with regard to that, to suggest that we did not take our obligations seriously with regard to our employees and their civil rights. And so, in part, we were entitled to show that we were serious about our obligations to our employees, and we did make an effort to abide by the law. So we think that we had the right to offer into evidence facts that would support that claim, that we had every intent, as we attempted also to show, that we had procedures in place for both FMLA and ADA kinds of claims. So we believe we had the right to do that, and we had the right to show good faith as well. So that's why we argued it, and that's why we put it in. So that would be my response to Your Honor. All right. Judge Mady or Judge Roth, any questions from you for Mr. Stein? Nothing for me. Nothing for him. I'm not sure whether I have any time left. I think we're at the mark, but if you need or want a moment or two, we gave counsel for the plaintiff a little extra time. So if you need a minute or two to wrap up, we'll give you that. Well, generally in response to, I suppose, Judge Roth's question, our basic argument with the district court's decision on the attorney's fees is that what we view as the law has set forth in some of the cases we cited, including the Shepard case, Pettigo, Petrollo, and a number of other cases, the court should start first with the question of whether the plaintiff has achieved any of the results that she wished when she filed the suit. And that, based on the Farrar case, and as I think set forth in Shepard, is the primary place that the court should start. Well, isn't it fair, particularly in the light of cases like Gudenkoff out of the Tenth Circuit, to say, well, they lost, but clearly the district court judge, in the discretion exercised and empowered to exercise, thought there was an important public purpose that was served by the suit anyway. Well, the Gudenkoff, I'm sorry. So, yeah, so they lost, but they did something that the court thought was societally worthwhile and therefore worthy of compensation. What's wrong with that? Well, the Gudenkoff case gets to that point practically first. The difference between Gudenkoff and the rest of the cases is Gudenkoff completely ignores or suggests that one can completely ignore the fact that the plaintiff recovered nothing. So, in your view, if they lose, they lose, and that's the end of it? Well, that depends. At some point, that weighs very heavily in the decision of what should be granted, if anything, and that's the primary consideration. This judge didn't consider that at all. Shepard also says, and some of the other cases say, that the conduct of the plaintiff, which resulted in the mixed motive decision to begin with, should be considered. This judge did not consider that at all. And we don't honestly think that this case resulted in anything of any particular benefit. It is more or less a regular case that provided no or solved no new issues, no new claims, and is not very significant on the horizon of disability law. Okay. Thank you, Mr. Stein. Ms. Davidson-Lelling, your rebuttal, please. Thank you, Your Honor. Yeah, so just to respond to Mr. Stein's argument that it was not very And it concluded, as written in his opinion, that the plaintiff was discriminated against based on her disability, which was significant in enforcing a citizen's right to be free from discrimination. And I would submit to you that the discrimination in this case was extremely invidious, that this was the president of the company acting top down and really using terms, responding to employees' complaints about And this was shocking. And, you know, the jury did award her nearly $300,000. I mean, there was powerful evidence of really invidious discrimination in this case. Well, the jury awarded her. Like, that's a point in contention. But we got your argument on that. Can you respond, please, with the time you got to the assertion that, look, you guys opened the door to this whole Advice to Counsel stuff right from the jump with your opening statement, painting them as just a lawless company who didn't care about the rights of workers and what the law said. So, yeah, of course. So that argument, one, you know, the question was really whether Ms. Schoenhofer's rights were violated. It was not a specific general, you know, this company never complies with the law. And, you know, really the issue here is that the only adverse action that was, you know, considered by the jury at trial was termination. And that was a decision as to which PCS never sought legal advice. In fact, even though they had already, you know, engaged a lawyer previously. Yeah, so let's take that. Let me ask you, if that's true, why isn't this harmless? They assume it's error. If, in fact, it's the case that the Advice to Counsel evidence that was presented at trial had only to do with the issue of whether Ms. Schoenhofer should be had to deal with, what difference does it make? When you say, oh, oh, it made a difference, clearly they thought that the company could do something wrong because they said there was discrimination against her and answered questions one and two in your client's favor. So where's the harm? Well, I mean, among other things, that, you know, the PCS argued that, you know, that basically because of the Advice of Counsel that they couldn't find, if they found good faith, they couldn't find on the retaliation claim. You know, there was, and really the questions of confusion of the jury on that point, because good faith is, one, not a defense. And, you know, it's not an element like in some other, you know, areas of the law where good faith is a defense. It's not a defense. And we didn't open the door. You know, they had already decided to, you know, I mean, you know, this door wasn't open. Like, you know, there was no general accusation. The door wasn't open. And it wasn't harmless, because, you know, what it did was it allowed them to rely on, you know, one, you know, the precondition was not satisfied. They had, you know, they shouldn't have gotten to claim, you know, good faith based on it, since, you know, sort of the precondition for an Advice of Counsel defense is that you actually, you know, made full disclosure. And they didn't do that. I mean, the evidence shows that they didn't do that, that Linda Schmack viewed the evidence. And, you know, she made decisions about what to provide to counsel in order to shape the opinion that they got. And you can't use the Advice of Counsel defense as a shield against liability. And allowing them to use it in this trial for that purpose was not harmless, because then they got to use it and claim good faith and use it as a shield against the retaliation claims, among other things. And it was not harmless. All right. Well, thank you, counsel, for your argument. We appreciate both sides being available. Sorry we're not in the courtroom to see you in person, but we've got the matter now under advisement. Your Honor, may I just make one last remark? Yeah, really quick, because we're way over time. What do you need to say? Okay. I would just like to highlight that there was, you know, in their fourth step reply brief, the defendants raised, you know, an issue of the Neuropsi case and another case. So the issues there with respect to that motivating factor question had never been raised in the district court. They'd never been raised before the fourth step appeal brief. And so we would submit that that issue should be deemed with. Done. I mean, we got your argument understood.